IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JOHN MICHAEL BECK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 21-cv-03249-LKG |
| | ) | |
| v. | ) | Dated:  October 16, 2023 |
| | ) | |
| NATIONAL SECURITY AGENCY, | ) | **FILED UNDER SEAL** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

I.   **INTRODUCTION**

Plaintiff, John Michael Beck, brings this civil action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the First Amendment, challenging the National Security Agency's ("NSA") determination that certain information contained in his worker's compensation claim is classified, pursuant to Executive Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009), or statutorily-protected under the National Security Act, 50 U.S.C. § 3605. *See generally*, ECF No. 1.  The NSA has moved for summary judgment in its favor on Plaintiff's claims, pursuant to Fed. R. Civ. P. 56. *See* ECF No. 15, 16 and 19.  No hearing is necessary to resolve the motion. *See* L.R. 105.6.  For the reasons that follow, the Court: (1) **GRANTS** the NSA's motion for summary judgment and (2) **DISMISSES** the complaint.

II.   **FACTUAL AND PROCEDURAL BACKGROUND**[1]

A.   **Factual Background**

In this civil action, Plaintiff, John Michael Beck, challenges the NSA's decision to

---

[1] The facts recited in this memorandum opinion are taken from the complaint; NSA's motion for summary judgment; the memorandum in support thereof; the parties' Joint Statement of Undisputed Facts; and the unclassified Declaration of Linda M. Kiyosaki. ECF Nos. 1, 15, 15-1, 26-1 (the "Joint Record") at JR002-05, JR0054-61.

designate certain information contained in a statement to support his worker's compensation
claim as either classified pursuant to Executive Order No. 13,526, or statutorily-protected under
the National Security Act, pursuant to the Federal Declaratory Judgment Act and the First
Amendment.  *See generally*, ECF No. 1.  In the complaint, Plaintiff alleges that NSA improperly
classified this information during the agency's prepublication review of information about his
"suffering from Unidentified Health incidents thought to originate from the use of a microwave
weapon by a foreign adversary during overseas work in 1996."  ECF No. 1 at 1.

The complaint asserts two claims against the NSA: (1) First Amendment/declaratory
judgment—right to publish-classification challenge (Count I) and; (2) First
Amendment/declaratory judgment—legal counsel's access to classified information/unredacted
documents (Count II).  *Id.* at ¶¶ 17-30.  As relief, Plaintiff seeks, among other things: (1) to
enjoin NSA from restraining the publication of any unclassified information contained in his
statement; (2) a declaratory judgment that he has a right to publish unclassified information; and
(3) a declaratory judgment that the information redacted and withheld by NSA is unclassified.
*Id.* at Prayer for Relief.

<u>Plaintiff's Employment History And Worker's Compensation Claim</u>

As background, Plaintiff is a former NSA employee, who worked for the agency from
1987 to 2016.   ECF No. 26-1 (the "Joint Record"), JR0002 at ¶ 1.

The NSA is a subcomponent of the Department of Defense that leads the United States
Government in cryptology and is responsible for global monitoring, collection and processing of
information and data for foreign and domestic intelligence and counterintelligence purposes.  *See*
https://www.nsa.gov.

On September 9, 1987, Plaintiff signed a nondisclosure agreement in connection with his
employment with NSA.  JR0002 at ¶ 2.  Pursuant to that agreement, Plaintiff agreed to, among
other things, the prepublication review of certain NSA-related materials that he may wish to
publish.  *Id.* at ¶ 3.

During the 1990s, Plaintiff and his NSA colleague traveled to a hostile foreign country on
an overseas assignment.  *Id.* at ¶ 4.  In 2006, Plaintiff was diagnosed with the early onset of
Parkinson's disease.  JR0003 at ¶ 5.  Plaintiff believes that his Parkinson's disease is the result of

his exposure to high-powered microwave rays during his overseas assignment in the 1990s. *Id.* at ¶¶ 4-5; ECF No. 1 at ¶¶ 7-8.

In 2012, Plaintiff initiated a worker's compensation claim with the Department of Labor related to his Parkinson's disease and work at NSA. ECF No. 1 at ¶ 8. The NSA maintains that the agency assisted Plaintiff in this effort, by identifying a mechanism through which Plaintiff could provide classified information to the Department of Labor to support his claim. *See* JR0059-60 at ¶ 17 (unclassified Declaration of Linda M. Kiyosaki).

In this regard, the NSA Chief of Enterprise Guidance Services, Linda M. Kiyosaki, explains in her unclassified Declaration that NSA authorized and encouraged Plaintiff to use the Department of Labor's classified channel to submit documentation related to his claim, but Plaintiff declined to do so. *Id.* Ms. Kiyosaki further explains that, in 2014, NSA provided Plaintiff with an unclassified, but "for official use only," memorandum for use in connection with his worker's compensation claim. *Id.*

Plaintiff alleges, however, that this memorandum was not helpful in supporting his claim, because NSA found no evidence to show that he was exposed to high-powered microwave rays during his overseas assignment. ECF No. 16 at 4. On September 15, 2014, the Department of Labor denied Plaintiff's worker's compensation claim, because the agency determined that Plaintiff had not proven that his alleged exposure to microwave rays caused his Parkinson's disease.[2] JR0013.

On November 18, 2016, Plaintiff, through counsel, requested that NSA convey to the Department of Labor the substance of certain internal agency discussions to support the claim that Plaintiff's injuries were work-related. JR0003 at ¶¶ 6-7. On November 29, 2016, NSA provided a letter to Plaintiff, which states, in relevant part, that:

> We acknowledge that the circumstances of Mr. Beck's illness and that of a coworker who traveled with him and is now deceased are unusual. It is for that reason that we have supported efforts to uncover solid evidence of high-powered microwave exposure during their trip. If such information were available, even if it were classified, we would do all we could to provide it

---

[2] On August 29, 2022, the Department of Labor reopened Plaintiff's worker's compensation claim. ECF No. 23 at ¶ 1. The Department of Labor issued a decision denying the claim on April 27, 2023. *Id.*

to the Department of Labor.  However, there is simply no evidence, either signals intelligence or otherwise, known to the Agency, to establish that Mr. Beck (or anyone) was deliberately exposed to high-powered microwave rays by that hostile foreign power during his trip in the late 1990s, or that the hostile foreign power had such a capability during that time. Conversely, there is no evidence to show that the hostile foreign power did not have such a capability at that time.

JR0003-04 at ¶ 8.  Subsequently, Plaintiff drafted his own statement in support of his worker's compensation claim.  JR0004 at ¶ 9.  It is undisputed that this statement includes the text of an email by an NSA official.  *Id.*

The NSA's Prepublication Review

On December 15, 2016, Plaintiff submitted his statement to NSA for prepublication review.  *Id.*  During the prepublication review, NSA determined that Plaintiff's statement included classified information, as well as information protected by the National Security Agency Act.  *Id.* at ¶ 10; *see also* JR0060 at ¶ 21.  And so, on January 27, 2017, NSA provided Plaintiff with the redacted version of his statement for use without restriction.  JR0004 at ¶ 10.

In 2022, NSA reviewed the redactions to Plaintiff's statement and determined that one of the redactions could be lifted.  JR0060 at ¶ 22.  But, NSA determined that Plaintiff's statement included other classified information that is protected under Section l.4(c) of Executive Order 13,526, which provides that information shall be considered for classification if it concerns: "intelligence activities (including covert action), intelligence sources or methods, or cryptology." JR0061 at ¶ 23; *see also* Exec. Order No. 13,526 § l.4(c), 75 Fed. Reg. 707 (Dec. 29, 2009). NSA also determined that Plaintiff's statement included: (1) the name of persons employed by NSA; (2) the activities and functions of the agency; and (3) the details of internal discussions and deliberations between NSA officials about sensitive intelligence gathering activities, which is information protected by the National Security Agency Act.  JR0061 at ¶¶ 23-24.

Ms. Kiyosaki states in her unclassified Declaration that she "personally reviewed the document [Plaintiff] submitted for prepublication review . . . [and] determined that the passages that remain redacted are, in fact, currently and properly classified or protected by [the National Security Agency Act]."  *Id.* at ¶ 24.  Ms. Kiyosaki also represents to the Court that:

> Based on [her] professional training and experience, it is [her] determination that public release of the classified redacted passages would

cause damage to the national security of the United States, and are therefore classified at the SECRET level. The redacted information is also Protected Information that [Plaintiff] agreed not to publicly disclose under his Security Agreement.

*Id.* And so, on June 11, 2022, NSA provided Plaintiff with a new copy of the statement with these updated redactions. JR0060 at ¶ 22.

On December 22, 2021, Plaintiff commenced this action challenging NSA's classification determination. ECF No. 1.

### B.    Procedural Background

Plaintiff commenced this action on December 22, 2021. *Id.* On June 14, 2022, the NSA filed a motion for summary judgment and a memorandum in support thereof, pursuant to Fed. R. Civ. P. 56. ECF Nos. 15 and 15-1. Plaintiff filed a response in opposition to the NSA's motion on July 14, 2022. ECF No. 16. The NSA filed a reply in support of its motion on September 2, 2022. ECF No. 19.

The NSA's motion for summary judgment having been fully briefed, the Court resolves the pending motion.

## III.    LEGAL STANDARDS

### A.    Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine

issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied,* 507 U.S. 972 (1993). But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc*., 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B.       Judicial Review Of Agency Classification Decisions

To determine whether redacted information is properly classified or protected by statute, a district court proceeds by first "inspect[ing]" the protected document *ex parte* and *in camera* and "consider[ing] any pleadings and declarations filed by the Government, as well as any materials filed by [plaintiff]." *Stillman v. CIA*, 319 F.3d 546, 548 (D.C. Cir. 2003). "[T]he court should then determine whether it can, consistent with the protection of [plaintiff]'s first amendment rights to speak and to publish, and with the appropriate degree of deference owed to the Executive Branch concerning classification decisions, resolve the classification issue without the assistance of plaintiff's counsel." *Id.* And so, courts have held that:

> [A] district court must first attempt to resolve a classification challenge *ex parte* and before reaching any associated constitutional questions, such as whether the author has a First Amendment right to publish classified information or whether his counsel must be provided access to classified information so that he can ably assist in pursuit of the author's First Amendment rights.

*Shaffer v. Def. Intel. Agency*, 102 F. Supp. 3d 1, 10 (D.D.C. 2015).

The United States Court of Appeals for the District of Columbia Circuit has also held that, when a court conducts an *ex parte*, *in camera* review of an agency's declarations asserting that information is properly classified or protected, the court must assure itself that the agency's explanations provide "reasonable specificity" and "demonstrat[e] a logical connection between the deleted information and the reasons for classification" or protection of information. *McGehee v. Casey*, 718 F.2d 1137, 1148 (D.C. Cir. 1983); *see also DiBacco v. U.S. Dep't of the Army*, 926 F.3d 827, 835 (D.C. Cir. 2019) (in the context of considering statutorily exempted information under the FOIA).  When the information at issue is classified, the agency must describe the harm to national security that would flow from disclosing the information.  *See, e.g.*, *Shaffer*, 102 F. Supp. 3d at 14 (citing McGehee, 718 F.2d at 1149).  But the agency need not demonstrate the harm that would flow from disclosing information protected under the National Security Agency Act, because "Congress has already decided that disclosure of NSA activities is potentially harmful."  *Linder v. Nat'l Sec. Agency*, 94 F.3d at 693, 696 (D.C. Cir. 1996) (cleaned up).

Courts have also held that the Executive Branch's classification determinations are entitled to "utmost deference" by the judiciary.  *See Taylor v. Dep't of the Army*, 684 F.2d 99, 109 (D.C. Cir. 1982) (requiring "utmost deference" to affidavits of intelligence officers) (quoting *Halkin v. Helms*, 598 F.2d 1, 9 (D.C. Cir. 1978)); *Simmons v. U.S. Dep't of Just.*, 796 F.2d 709, 711 (4th Cir. 1986) ("In judging agency decisions and affidavits in the area of national security, however, courts have given substantial weight to the expertise of the agencies charged with determining what information the government may properly release.").   And so, courts generally afford deference to the Government's declarations across the spectrum of national security jurisprudence.  *McGehee*, 718 F.2d at 1148-49; *see also Stillman*, 319 F.3d at 549 (observing, in the context of a prepublication review case, that there is an "appropriate degree of deference owed to the Executive Branch concerning classification decisions"); *Shaffer*, 102 F. Supp. 3d at 10 ("courts afford deference to Executive Branch classification decisions, *see, e.g.*, *Salisbury v. United States*, 690 F.2d 966, 973 (D.C. Cir. 1982), because the Executive Branch generally is better positioned than the Judiciary to assess the need to classify certain information"); *Berntsen v. CIA*, 618 F. Supp. 2d 27, 30-31 (D.D.C. 2009).[3]

---

[3] The Fourth Circuit has recently recognized that:

## C.    Executive Order 13,526

Relevant to this dispute, Executive Order 13,526 "prescribes a uniform system for classifying, safeguarding, and declassifying national security information."  Classified National Security Information, Exec. Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009).  There are four conditions that must be satisfied to classify national security information pursuant to Executive Order 13,526: (1) the information must be classified by an "original classification authority;" (2) the information must be "owned by, produced by or for, or [be] under the control of the government;" (3) the information must fall within one of the authorized classification categories listed in Section 1.4 of the Executive Order; and (4) the original classification authority must "determine[ ] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security" and must be "able to identify or describe the damage." *Id.* § 1.1.  Information that may be considered for classification, includes information that relates to "intelligence activities (including covert action), intelligence sources or methods, or cryptology."  *Id.* § 1.4(c).

---

> Information related to national security has, since World War I, been graded according to sensitivity under a classification system. . . . And security agencies have, over the years, adopted policies and regulations to protect classified information from public disclosure. They have also required various employees to sign agreements, as a condition of employment or as a condition for receiving access to classified information, requiring the employees to follow the agencies' policies and regulations. . . .
>
> Under current classifications, information that, if disclosed, "reasonably could be expected to cause damage to the national security" is classified as "Confidential"; information the disclosure of which "reasonably could be expected to cause serious damage to the national security" is classified as "Secret"; and information that, if disclosed, "reasonably could be expected to cause *exceptionally grave* damage to the national security" is classified as "Top Secret." Exec. Order No. 13,526, 75 Fed. Reg. at 707–08 (emphasis added). In addition, when information "concern[s] or [is] derived from intelligence sources, methods[,] or analytical processes" that require protection "within formal access control systems," it may be further designated as "Sensitive Compartmented Information," or "SCI." Intelligence Community Directive 703, *Protection of Classified National Intelligence, Including Sensitive Compartmented Information* § 2 (June 21, 2013).

*Edgar v. Haines*, 2 F. 4th 298, 303–04 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 2737, 212 L. Ed. 2d 796 (2022).

D.    **The National Security Agency Act**

The National Security Agency Act provides protection against disclosure of intelligence information related to NSA.  *See* 50 U.S.C. § 3605(a) (providing that "nothing in . . . any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof, or of the names, titles, salaries, or number of the persons employed by such agency.").  Pursuant to the National Security Agency Act, NSA information must be protected from compelled disclosure, including the disclosure of: (1) "the organization or any function of the [NSA];" (2) "any information with respect to the activities thereof;" or (3) "the names, titles, salaries, or number of the persons employed by such agency."  50 U.S.C. § 3605(a).  The National Security Agency Act "provides absolute protection from disclosure, without requiring a showing of harm to the national security."  *James Madison Project v. Nat'l Sec. Agency*, No. CV TDC-22-0153, 2023 WL 4181196, at *5 (D. Md. June 26, 2023) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 868 (D.C. Cir. 2009)).

E.    **The First Amendment And Prepublication Review**

Lastly, courts have long recognized that "a person's First Amendment right to freedom of speech yields to the [G]overnment's 'compelling interest' in preventing the publication or dissemination of classified information."  *Wilson v. McConnell*, 501 F. Supp. 2d 545, 551 (S.D.N.Y. 2007), *aff'd sub nom. Wilson v. CIA*, 586 F.3d 171 (2d Cir. 2009) (citing *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980)); *see Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975); *United States v. Marchetti*, 466 F.2d 1309, 1315-16 (4th Cir. 1972).  And so, "[c]ourts have uniformly held that current and former government employees have no First Amendment right to publish properly classified information to which they gain access by virtue of their employment."  *Stillman v. CIA*, 517 F. Supp. 2d 32, 38 (D.D.C. 2007); *see also Wilson*, 586 F.3d at 183-84 ("[O]nce a government employee signs an agreement not to disclose information properly classified pursuant to executive order, that employee 'simply has no first amendment right to publish' such information.") (quoting *Stillman*, 319 F.3d at 548).

Courts have also held that the United States intelligence community's prepublication review policies do not violate the First Amendment, by preventing individuals who signed non-disclosure agreements from publicly disclosing information protected by such agreements.  *See,*

*e.g.*, *Snepp*, 444 U.S. at 509 n.3; *Edgar v. Haines*, 2 F. 4th 298, 312 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 2737, 212 L. Ed. 2d 796 (2022).  Notably, in *Edgar v. Haines*, the Fourth Circuit recently recognized that:

> Disclosing information involving national security can be detrimental to the vital national interest, and courts have recognized that the government has "a compelling interest in protecting . . . the secrecy of [such] important" information. *Snepp v. United States*, 444 U.S. 507, 509 n.3, 100 S. Ct. 763, 62 L.Ed.2d 704 (1980) (per curiam). As a consequence, agencies involved in intelligence and national security currently have in place, through policies and regulations, a range of practices and procedures designed to protect against the inappropriate disclosure of information related to national security. One such practice and procedure is "prepublication review," which requires current and former employees to submit materials intended for publication to their agencies to enable the agencies to redact, in advance of publication, classified or otherwise sensitive information. This prepublication review process — which is the subject of the plaintiffs' challenge here — relies on the agency's judgment about what is sensitive and detrimental to the national security and therefore must be redacted, rather than on the employee's independent judgment. This is because the agency has a "broader understanding of what may expose classified information and confidential sources." *Id*. at 512, 100 S. Ct. 763.

2 F. 4th at 304.  And so, the Fourth Circuit has found Federal agency prepublication review regimes to be "a reasonable means of serving the government's compelling interest in keeping classified or otherwise sensitive information secret, and therefore they do not violate the plaintiffs' First Amendment speech rights."   *Id.* at 316.

## IV.    LEGAL ANALYSIS

NSA has moved for summary judgment in its favor on Plaintiff's claims in this action upon the following six grounds: (1) Plaintiff's claim fails as a matter of law, because he has no right to publish classified or sensitive information protected by his nondisclosure agreement; (2) Plaintiff's classification challenge also fails as a matter of law, because the information at issue is either properly classified or statutorily-protected under the National Security Agency Act; (3) NSA's redaction determinations in this case are entitled to deference by the Court; (4) the undisputed material facts show that NSA redacted and withheld properly classified information from Plaintiff's statement; (5) the undisputed material facts show that NSA properly redacted and withheld statutorily-protected information from Plaintiff's statement; and (6) Plaintiff's

claim that the First Amendment requires the disclosure of classified or sensitive information to his counsel lacks merit.[4]  ECF No. 15-1 at 14-30.

In his response in opposition to NSA's motion, Plaintiff acknowledges that he may not disclose properly classified information.  ECF No. 16 at 7.  But Plaintiff argues that NSA is not entitled to summary judgment, because: (1) he has a First Amendment right to publish unclassified information; (2) NSA improperly classified the information at issue in this case; and (3) the unclassified Declaration of Linda M. Kiyosaki is not sufficient to assess the propriety of NSA's classification determination and whether the agency appropriately redacted information pursuant to the National Security Agency Act.  *Id.* at 7-16.  And so, Plaintiff requests that the Court deny NSA's motion.  *Id.* at 16.  Alternatively, Plaintiff requests that the Court allow his counsel to review the classified materials related to this case *in camera* before the Court resolves NSA's motion for summary judgment.  *Id.* at 16-20.

For the reasons that follow, the undisputed material facts in this case show that: (1) NSA properly redacted and withheld information from Plaintiff's statement that is either classified, pursuant to Executive Order 13,526, or statutorily-protected from disclosure under Section 3605 of the National Security Agency Act and (2) Plaintiff voluntarily entered into a nondisclosure agreement that prohibits the disclosure of this information.  And so, the Court GRANTS NSA's motion for summary judgment and DISMISSES the complaint.

### A.   NSA Properly Determined That Certain Information Contained In Plaintiff's Statement Is Classified Pursuant To Executive Order 13,526

Because Plaintiff acknowledges that he has no First Amendment right to publicly disclose properly classified information, the central issue in this case is whether NSA properly classified the information redacted from his statement.  And so, the Court begins its analysis by considering whether the undisputed material facts in this case show that NSA properly classified this information under Executive Order 13,526.

Pursuant to Executive Order 13,526, information may be originally classified if, among other things, an official with "classification authority" decides that its release could result in

---

[4] On June 15, 2023, the NSA withdrew its argument that Plaintiff lacks standing to pursue his claims in this matter.  ECF No. 23.

damage to national security and the information relates to one or more specified subject matters, such as: (1) "military plans, weapons systems, or operations;" (2) "foreign government information;" and (3) "intelligence activities (including covert action), intelligence sources or methods, or cryptology." Exec. Order No. 13,526, §§ 1.1, 1.4. In this regard, there are four conditions that must be satisfied to classify national security information pursuant to Executive Order 13,526: (1) the information must be classified by an "original classification authority;" (2) the information must be "owned by, produced by or for, or [be] under the control of" the Government; (3) the information must fall within one of the authorized classification categories listed in Section 1.4 of the Executive Order; and (4) the original classification authority must "determine[ ] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security" and must be "able to identify or describe the damage." *Id.* § 1.1. Relevant here, information that relates to "intelligence activities (including covert action), intelligence sources or methods, or cryptology" may be classified pursuant to Executive Order 13,526. *Id.* § 1.4(c).

The undisputed material facts in this case show that NSA properly classified certain information that the agency redacted and withheld from Plaintiff's statement pursuant to Executive Order 13,526. First, there is no dispute that the information redacted and withheld by NSA has been classified by "an original classification authority." Exec. Order No. 13,526, § 1.1(a)(1). The NSA's Chief of Enterprise Guidance Services, Linda M. Kiyosaki, states in her unclassified Declaration that she is designated as an original classification authority for NSA under Executive Order 13,526, which allows her to make classification decisions at the TOP SECRET and SECRET levels. JR0055 at ¶ 4. Ms. Kiyosaki also explains in her unclassified Declaration, that she reviewed the information at issue in this case and determined that the redacted and withheld passages from Plaintiff's statement are properly classified under Executive Order 13,526. JR0061 at ¶ 24. Given this, NSA has satisfied the first condition for classifying information under Executive Order 13,526, by showing that the information has been classified by an original classification authority.

It is also undisputed that the information at issue is "owned, produced by or for, or under . . . the control of the United States Government." Exec. Order No. 13,526, § 1.1(a)(2). Plaintiff acknowledges that all NSA information that he acquired during the course of his employment with the agency is the property of the United States Government. JR0002 at ¶ 3; JR0010 at ¶ 2.

And so, NSA also shown that the information redacted and withheld by NSA from Plaintiff's statement is owned, produced by or for, or under the control of the Government.

NSA has similarly shown that the information at issue in this case falls within one of the authorized classification categories set forth in Section 1.4 of Executive Order 13,526.  Section 1.4 of Executive Order 13,526 details seven categories of information that may be considered for classification, including information that relates to "intelligence activities (including covert action), intelligence sources or methods, or cryptology."  Exec. Order No. 13,526, § 1.4(c).  Executive Order 13,526 further provides that "SECRET" level classification "shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security that the original classification authority is able to identify or describe."  *Id.* § 1.2(a)(2).

In her unclassified Declaration, Ms. Kiyosaki explains that the redacted and withheld information that NSA has classified as SECRET concerns intelligence sources, methods, and activities concerning particular intelligence gathering methods, particular intelligence operations, and the identities of personnel involved in clandestine operations.  *See* JR0061 at ¶¶ 23-24.  Plaintiff does not dispute Ms. Kiyosaki's characterization of this information.  *See generally*, ECF No. 16.  The Court's review of this classified information also confirms the accuracy of Ms. Kiyosaki's description.  And so, the Court agrees with NSA that this information falls within the scope of Section 1.4(c) of Executive Order 13,526, because the information addresses "intelligence activities (including covert action), intelligence sources or methods, or cryptology" and is classified at the SECRET level.

Lastly, NSA has shown that the Executive Order's fourth requirement—that the original classification authority determined that the unauthorized disclosure of the information could be reasonably expected to result in damage to the national security and identified or described the damage—is met in this case.  *See* Exec. Order No. 13,526, § 1.1(a)(4).  Ms. Kiyosaki states in her unclassified Declaration that she determined that the disclosure of information contained in Plaintiff's statement about NSA's intelligence activities, intelligence sources or methods, or cryptology could reasonably be expected to result in damage to the national security.  *See* JR0061 ¶ 24 (Ms. Kiyosaki explaining that "public release of the classified redacted passages would cause damage to the national security of the United States.").

In her classified Declaration, Ms. Kiyosaki also describes in greater detail the reasons why the unauthorized disclosure of each of the redacted passages in Plaintiff's statement could seriously risk compromising intelligence sources and methods. Given this, NSA has also shown that the original classification authority determined that the unauthorized disclosure of the information at issue reasonably could be expected to result in damage to national security.

Because NSA has shown that each of the requirements of Executive Order 13,526 have been met in this case, the Court is satisfied that NSA properly classified the information that it redacted and withheld from Plaintiff's statement.

### B.    NSA Properly Determined That Certain Information Contained In Plaintiff's Statement Is Statutorily-Protected Pursuant To Section 3605

The undisputed material facts in this case also show that NSA appropriately determined that certain information contained in Plaintiff's statement is statutorily-protected under Section 3605 of the National Security Agency Act. And so, for the reasons discussed below, the Court is also satisfied that the agency properly redacted and withheld this information.

The National Security Agency Act provides that information regarding: (1) "the organization or any function of the [NSA];" (2) "any information with respect to the activities thereof;" or (3) "the names, titles, salaries, or number of the persons employed by such agency[,]" must be protected from compelled disclosure. 50 U.S.C. § 3605(a). And so, this Court has held that the National Security Agency Act "provides absolute protection from disclosure, without requiring a showing of harm to the national security." *James Madison Project*, 2023 WL 4181196, at *5 (quoting *Larson*, 565 F.3d at 868).

The undisputed material facts in this case make clear that NSA properly determined that information about the names of individuals employed by NSA; the activities and functions of the NSA; and the details of internal discussion and deliberations between NSA officials about sensitive intelligence gathering activities, should be redacted from Plaintiff's statement pursuant to Section 3605 of the National Security Agency Act. As Ms. Kiyosaki explains in her unclassified Declaration, Plaintiff's statement includes "the name[s] of persons employed by the agency, the activities and functions of the agency, and the details of internal discussions and deliberations between agency officials about sensitive intelligence gathering activities." JR0061 at ¶ 23. Such information is protected from disclosure under the plain text of Section 3605. 50

14

U.S.C. § 3605(a) (providing that nothing shall be construed to require the disclosure of NSA information "with respect to the activities thereof, or of the names, titles, salaries, or number of the persons employed by" NSA).

Ms. Kiyosaki also explains in her unclassified Declaration that one of the primary missions of NSA is "to collect, process, analyze, produce, and disseminate signals intelligence ("SIGINT") information for foreign intelligence and counterintelligence purposes to provide support for national and departmental requirements and for the conduct of military operations." JR0056 at ¶ 8.  Given this, the information in Plaintiff's statement that describes NSA activities and functions, and the details of internal agency discussions and deliberations about sensitive intelligence gathering activities, is also protected under Section 3605.  And so, the Court is satisfied that NSA also appropriately redacted and withheld this statutorily-protected information from Plaintiff's statement, pursuant to Section 3605 of the National Security Agency Act.[5]

### C.      Plaintiff Cannot Prevail On His First Amendment Challenge

Because the undisputed material facts in this case show that NSA properly determined that Plaintiff's statement contains classified and statutorily-protected information, NSA persuasively argues that Plaintiff cannot prevail on his First Amendment challenge to NSA's classification determination.

Courts have long recognized that "a person's First Amendment right to freedom of speech yields to the [G]overnment's 'compelling interest' in preventing the publication or dissemination of classified information." *Wilson*, 501 F. Supp. 2d at 551 (citing *Snepp*, 444 U.S. at 509 n.3); *see Alfred A. Knopf*, 509 F.2d at 1370; *Marchetti*, 466 F.2d at 1315-16.  And so, "[c]ourts have uniformly held that current and former government employees have no First Amendment right to publish properly classified information to which they gain access by virtue of

---

[5] This Court affords deference to NSA's classification determinations.  As the D.C. Circuit has held, the Executive Branch's classification determinations are entitled to "utmost deference" by the judiciary, because of the expertise of the agencies charged with determining what information the Government may properly release.  *See Taylor v. Dep't of the Army*, 684 F.2d 99, 109 (D.C. Cir. 1982) (requiring "utmost deference" to affidavits of intelligence officers) (quoting *Halkin v. Helms*, 598 F.2d 1, 9 (D.C. Cir. 1978)); *Simmons v. U.S. Dep't of Just.*, 796 F.2d 709, 711 (4th Cir. 1986) ("In judging agency decisions and affidavits in the area of national security, however, courts have given substantial weight to the expertise of the agencies charged with determining what information the government may properly release.").

their employment." *Stillman*, 517 F. Supp. 2d at 38; *see also Wilson*, 586 F.3d at 183-84 ("[O]nce a government employee signs an agreement not to disclose information properly classified pursuant to executive order, that employee 'simply has no first amendment right to publish' such information.") (quoting *Stillman*, 319 F.3d at 548).

The Supreme Court and the Fourth Circuit have also held that the United States intelligence community's prepublication review policies do not violate the First Amendment, by preventing individuals who signed non-disclosure agreements from publicly disclosing information protected by such agreements. *See, e.g.*, *Snepp*, 444 U.S. at 509 n.3; *Edgar*, 2 F. 4th at 312. Notably, in *Edgar v. Haines*, the Fourth Circuit recently recognized that:

> Disclosing information involving national security can be detrimental to the vital national interest, and courts have recognized that the government has "a compelling interest in protecting . . . the secrecy of [such] important" information. *Snepp v. United States*, 444 U.S. 507, 509 n.3, 100 S. Ct. 763, 62 L.Ed.2d 704 (1980) (per curiam). As a consequence, agencies involved in intelligence and national security currently have in place, through policies and regulations, a range of practices and procedures designed to protect against the inappropriate disclosure of information related to national security. One such practice and procedure is "prepublication review," which requires current and former employees to submit materials intended for publication to their agencies to enable the agencies to redact, in advance of publication, classified or otherwise sensitive information. This prepublication review process — which is the subject of the plaintiffs' challenge here — relies on the agency's judgment about what is sensitive and detrimental to the national security and therefore must be redacted, rather than on the employee's independent judgment. This is because the agency has a "broader understanding of what may expose classified information and confidential sources." *Id*. at 512, 100 S. Ct. 763.

2 F. 4th at 304. And so, the Fourth Circuit has found Federal agency prepublication review regimes to be a "reasonable means of serving the government's compelling interest in keeping classified or otherwise sensitive information secret, and therefore they do not violate the plaintiffs' First Amendment speech rights." *Id.* at 316.

The Fourth Circuit has also recognized that employees of Federal intelligence and national security agencies knowingly waive their First Amendment rights to challenge the requirement that they submit materials for prepublication review, and the stated conditions of prepublication review, if they voluntarily sign a nondisclosure agreement. *Id*. at 312-13. And so, by entering into a nondisclosure agreement, such employees relinquish their First Amendment

rights to the sensitive information protected by those agreements.  *Id.* at 312 (quoting *Alfred A. Knopf*, 509 F.2d at 1370).

Applying these legal principles here, the undisputed material facts in this case show that Plaintiff cannot prevail on his First Amendment challenge to NSA's decision to redact and withhold properly classified and statutorily-protected information from his statement.  As discussed above, it is undisputed in this case that Plaintiff voluntarily signed a nondisclosure agreement as a condition of his employment with NSA, and that this agreement prohibits Plaintiff from, among other things, disclosing classified information and statutorily-protected information under Section 3605 of the National Security Agency Act.  JR0002 at ¶ 2; JR0010 at ¶¶ 1(b), 2; ECF No. 16 at 7; *see also* JR0010 at ¶¶ 1(b) and 7 (providing that sensitive information consists of "classified and unclassified information relating to the organization, functions, activities, and personnel of the NSA" and that "the disclosure of unclassified Protected Information" is protected by "applicable legal restrictions, including . . . the National Security Agency Act of 1959").

There is also no dispute in this case that Plaintiff agreed to the prepublication review of his statement under the terms of his nondisclosure agreement.  JR0002 at ¶ 2; ECF No. 16 at 13.  As the Fourth Circuit has explained, such a prepublication review process is "a reasonable means of serving the government's compelling interest in keeping classified or otherwise sensitive information secret."  *Edgar*, 2 F. 4th at 316.  And so, NSA's prepublication review process, and the agency's classification determination, do not violate Plaintiff's First Amendment rights to speak and to publish.  *Id.*

The Court also agrees with NSA that Plaintiff has no First Amendment right to disclose the statutorily-protected information contained in his statement.  Neither the Supreme Court nor the Fourth Circuit have directly addressed the question of whether current and former NSA employees have a First Amendment right to publish statutorily-protected information under Section 3605 of the National Security Agency Act.  But, as discussed above, the Fourth Circuit has recognized that employees of Federal intelligence and national security agencies relinquish their First Amendment rights to the sensitive information protected by nondisclosure agreements, by entering into such agreements.  *Id.* at 312.  Given this, Plaintiff's First Amendment challenge to NSA's decision to redact and withhold statutorily-protected

17

information from his statement should have the same fate as his challenge to the agency's decision to redact and withhold properly classified information from Plaintiff's statement.

As this Court has recognized, the National Security Agency Act "provides absolute protection from disclosure, without requiring a showing of harm to the national security." *James Madison Project*, 2023 WL 4181196, at *5 (quoting *Larson*, 565 F.3d at 868).[6]  And so, Congress has expressly required that NSA protect such information from disclosure.  The undisputed material facts in this case also make clear that Plaintiff voluntarily entered into a nondisclosure agreement that prohibits him from disclosing information that is protected by the National Security Agency Act.  Notably, Plaintiff's nondisclosure agreement provides that this agreement covers "classified and unclassified information relating to the organization, functions, activities, and personnel of the NSA."  JR0010 at ¶ 1(b); *see also* JR0010 at ¶ 7 (providing that "the disclosure of unclassified Protected Information" is protected by "applicable legal restrictions, including . . . the National Security Agency Act of 1959.").  Given this, Plaintiff is clearly prohibited from publishing this statutorily-protected information.

As the Fourth Circuit has recognized, "the government has 'a compelling interest in protecting . . . the secrecy of [such] important' information." *Edgar*, 2 F. 4th at 304 (citing *Snepp*, 444 U.S. at 509).   NSA's prepublication review process is "a reasonable means of serving the government's compelling interest in keeping classified or otherwise sensitive information secret." *Id.* at 316.  And so, NSA's decision to redact and withhold this statutorily-protected information from Plaintiff's statement also does not violate Plaintiff's First Amendment rights.[7]   *Id.*

---

[6] Plaintiff correctly observes that NSA's policy generally permits the publication and disclosure of unclassified information and that statutorily-protected information under the National Security Agency Act is not necessarily classified information.  ECF No. 16 at 13 (arguing that that "the law . . . is well-settled that once the individual has left federal service the Government cannot censor information other than what is classified," and equating statutorily-protected information with unclassified information).

[7] The Court also declines to allow Plaintiff's counsel to review the classified and statutorily-protected information at issue in this case, before resolving NSA's motion for summary judgment.  ECF No. 16 at 16-20.  When determining whether redacted information is properly classified or protected by statute, this Court first proceeds by "inspect[ing]" the protected document *ex parte* and *in camera* and "consider[ing] any pleadings and declarations filed by the Government, as well as any materials filed by [plaintiff]." *Stillman v. CIA*, 319 F.3d 546, 548 (D.C. Cir. 2003).  After conducting this *ex parte* and *in camera* review, "the court should then determine whether it can, consistent with the protection of [plaintiff]'s first amendment rights to speak and to publish, and with the appropriate degree of deference owed to the

## V.    CONCLUSION

In sum, the undisputed material facts in this case show that: (1) NSA properly redacted and withheld information from Plaintiff's statement that is either classified, pursuant to Executive Order 13,526, or statutorily-protected from disclosure under Section 3605 of the National Security Agency Act and (2) Plaintiff voluntarily entered into a nondisclosure agreement that prohibits the disclosure of this information.  And so, for the foregoing reasons, the Court:

(1) **GRANTS** NSA's motion for summary judgment; and

(2) **DISMISSES** the complaint.

A separate Order shall issue.

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

---

Executive Branch concerning classification decisions, resolve the classification issue without the assistance of plaintiff's counsel." *Id.*  The Court has carefully reviewed the classified Declaration of Ms. Kiyosaki, as well as the unredacted version of Plaintiff's statement in connection with its consideration of NSA's motion for summary judgment.  The Court determines that it can resolve the motion without the assistance of Plaintiff's counsel.